[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11227
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-00031-TCB-CCH-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZHONG LIANG LI,
a.k.a. Ken Li,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 25, 2014)

Before WILSON, FAY and KRAVITCH, Circuit Judges.

PER CURIAM:

Zhong Liang Li appeals his conviction for a single count of conspiring to produce false identification documents, transfer false identification documents, and encourage and induce aliens to illegally reside in the United States, all in violation of 18 U.S.C. §§ 371, 1028 and 8 U.S.C. § 1324.[1]  Following his conviction, the court sentenced Li to 50 months' imprisonment.

I.

In January 2010, a grand jury indicted Li for his role in a conspiracy to provide fraudulent driver's licenses to people who did not qualify for them.  The indictment alleged that Li and others, including Guo Xing Song and Cleveland Spencer, arranged for illegal aliens to obtain licenses that were fraudulently issued by Spencer, a Georgia Department of Driver Services employee.  The indictment identified fraudulent licenses that were issued from 2001 to 2006.  Li was arrested in 2010 by FBI Special Agent Darin Werking.  At trial, both Spencer and Song testified that they continued to work with Li until 2006.  Li, testifying in his own defense, stated that he stopped participating in the license arrangement in 2004 and that he told Spencer and Song that he was stopping at that time.  Werking testified that, in a post-arrest interview, Li did not tell Werking that he had informed any of

---

[1] We note a clerical error in the judgment form.  The judgment in this case reflects that Li was convicted of conspiring to encourage or induce illegal aliens to reside in the United States. However, Li was convicted, all under one count, of conspiring to encourage or induce illegal aliens to reside in the United States, producing false identification documents, and transferring false identification documents (as objects of the conspiracy).  While nothing in the judgment is incorrect, the judgment form is incomplete.

his co-conspirators that he wanted to stop participating in the license arrangement.

In closing argument, Li's counsel argued that the jury should acquit Li based on a

withdrawal defense, contending that Li withdrew from the conspiracy more than

five years before the indictment, which would place his participation in the

conspiracy outside of the relevant statute of limitations.[2]  In its rebuttal closing

argument, the government suggested that Li fabricated that testimony, stating as

follows:

> Now, [defense counsel] points out that when [Li] talked to—to Agent
> Werking in January 2010, he didn't know the law, didn't know the
> law, statute of limitations, the law of withdrawal.  That's right.  And
> as you heard from Agent Werking, he never asserted in that interview
> that he'd withdrawn from the conspiracy.  He didn't know then that
> that would be an important fact at his trial today.  He didn't come up
> with that until today when he testified on the stand for the first time
> that he'd withdrawn or made any statements in any way to these other
> co-conspirators to withdraw from the conspiracy.  And that was the
> first time he said it, and you shouldn't believe it because today it's too
> convenient.  He has too much of a motive for coming up with that
> now when he didn't tell Agent Werking back in 2010.

After deliberation, the jury found Li guilty of the single count of conspiracy

and all three objects of the conspiracy in the indictment with which he was

---

[2] Generally, an accused conspirator's participation is presumed to continue until all conspiratorial objects have been achieved or the last overt act has been committed; however, if the defendant establishes the affirmative defense of withdrawal, "the statute of limitations will begin to run at the time of withdrawal."  *United States v. Arias*, 431 F.3d 1327, 1340 (11th Cir. 2005).  Proof of withdrawal requires a showing that the defendant took affirmative steps to defeat the objectives of the conspiracy and that he either made a reasonable effort to communicate these acts to his co-conspirators or disclose the scheme to law enforcement authorities.  *Id*. at 1340–41.

charged.  At sentencing, the court considered whether Li should receive an obstruction-of-justice enhancement for lying during the trial about how long he was involved in the conspiracy.  The court noted that Li claimed he did not discuss the timing of his withdrawal in the post-arrest interview in part because he was unaware that the timing was a significant fact.  In response, the government stated, "I think that [Li] is correct insofar as he asserts that at the time he made his statement, Mr. Li was not aware of the significance of that.  That's probably correct."  On appeal, Li argues that the government committed reversible prosecutorial misconduct in closing argument and that the government's statement at sentencing was a concession that the remarks in closing were misleading to the jury.

## II.

We generally review allegations that a prosecutor's statements led to a due process violation de novo.  *United States v. Baker*, 432 F.3d 1189, 1252 (11th Cir. 2005).  Where a defendant did not object the prosecutor's statement at trial, however, we review a challenge to the propriety of any statement for plain error only.  *United States v. Rodgers*, 981 F.2d 497, 499 (11th Cir. 1993) (per curiam).  Under plain error review, we will only reverse if (1) there was an error, (2) that was plain or obvious, (3) that affected the defendant's substantial rights in that it was prejudicial and not harmless, and (4) that seriously affected the fairness,

integrity, or public reputation of the judicial proceedings. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012) (internal quotation marks omitted).

To find prosecutorial misconduct, we must conclude that (1) the prosecutor's remarks were improper, and (2) the remarks prejudicially affected the defendant's substantial rights. *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991). The second prong of this test is met where there is a reasonable probability that, but for the improper statements, the outcome of the case would have been different. *Id*. at 1206–07.

### III.

We review the question of prosecutorial misconduct for plain error only, as Li never objected to the government's statement.[3] *See Rodgers*, 981 F.2d at 499.

Li argues that it was improper for the prosecutor to suggest in closing that Li fabricated his testimony as to when he withdrew from the conspiracy. As support, Li points to *Davis v. Zant*, where we held that the state prosecutor's comments that the defendant had fabricated his defense at trial were improper, warranting a new trial. 36 F.3d 1538, 1546–51 (11th Cir. 1994) (appealing the denial of a § 2254 petition). However, in *Davis*, it was not the allegation of fabrication in and of itself that made the argument improper. *Id.* at 1548. Rather, the impropriety arose

---

[3] Li states that counsel's failure to object to the prosecutor's argument at trial "is by no means fatal to this claim being asserted on appeal as it did not ripen until . . . sentencing." Although his failure to object at trial is not fatal to his appeal, Li also failed to raise any objection during the sentencing hearing, and thus there is no question that plain error review applies.

from the fact that the prosecutor relied on *false statements* to make his allegation. *See id.* ("In this case, however, the impropriety lies in the prosecutor's use of misstatements and falsehoods.  Little time and no discussion is necessary to conclude that it is improper for a prosecutor to use misstatements and falsehoods.").[4]  There is no legal support for the proposition that the government's mere suggestion that Li fabricated his testimony, without more, constitutes misconduct.  Unlike in *Davis*, the government was not aware of extrinsic evidence that strongly contradicted its assertion. *See id.* at 1548–49.  Rather, the government here based its suggestion that Li fabricated his testimony regarding when he withdrew from the conspiracy on evidence that (1) both of his co-conspirators testified that Li never sought to withdraw, and (2) Li did not tell the FBI in a post-arrest interview that he attempted to withdraw.

Although Li points to the government's statement at sentencing that Li was probably unaware of the legal effect of the statute of limitations when he spoke with the FBI as a concession that the government knew that its statement during closing was false, this is an illogical interpretation of the government's position.  Instead, Li's lack of knowledge regarding the statute of limitations could reasonably support the government's assertion that Li did not have a reason to lie

---

[4] In *Davis*, the defendant argued that another person had committed the murder, and the prosecutor alleged that defense to be a recent fabrication, even though the prosecutor knew that the other person had confessed to the crime months before.  36 F.3d at 1548–49.

when he initially spoke with the FBI, but then he did have a reason to lie once he learned of the legal significance of withdrawal. In fact, the government made this exact argument in its closing.

The government's argument that the jury should not believe Li's testimony regarding his withdrawal from the conspiracy was reasonably based on evidence admitted at trial and was not improper. *See Eyster*, 948 F.2d at 1206. Further, the statements made at closing were certainly not improper such that the district court plainly erred in allowing the government to make them, nor do the challenged remarks risk seriously affecting the fairness and integrity of the trial. *See Rodgers*, 981 F.2d at 499.

While our finding that there was no plain error in the prosecutor's statements renders a prejudice inquiry unnecessary, we also note that the district court gave instructions to the jury regarding how statements made by the lawyers should be used and considered (noting that anything the lawyers said was not evidence in the case). *See United States v. Bailey,* 123 F.3d 1381, 1402 (11th Cir.1997) (finding that any possible prejudice to a defendant "resulting from the prosecutor's closing argument was cured by [similar] instructions" from the trial judge). The jury is presumed to have followed these instructions. *See United States v. Calderon,* 127 F.3d 1314, 1334 (11th Cir.1997). We affirm Li's conviction.

**AFFIRMED.**